Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Victoria E. Mulvey (SBN 343220)
vmulvey@blakelylawgroup.com
BLAKELY LAW GROUP
1108 Manhattan Avenue, Suite B
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*Hydroxie LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYDROXIE LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>FLAME USA INC, a California Corporation; Maduro Distributor, an unknown corporate entity; ALBERT GUZMAN, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.: 2:25-cv-09985<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**1. LANHAM ACT FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTIONS, AND FALSE ADVERTISING – 15 U.S.C. §1125(a)**<br><br>**2. LANHAM ACT TRADE DRESS INFRINGEMENT – 15 U.S.C. §1125(a)**<br><br>**3. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE, § 17200, et seq.**<br><br>**4. COMMON LAW TRADEMARK AND TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Hydroxie LLC ("Hydroxie" or "Plaintiff") for its claims against Defendants Flame USA Inc ("Flame USA"), Maduro Distributor ("Maduro"), Albert Guzman ("Guzman"), and DOES 1-10 (collectively "Defendants") alleges as follows:

## JURISDICTION AND VENUE

1.    Plaintiff files this action against Defendants for trademark infringement

and false designation of origin under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), and related claims of trademark infringement and unfair competition under the statutory and common law of the State of California.

2.    This Court has subject matter jurisdiction over Plaintiff's Lanham Act claims under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.    This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants reside and maintain a principal place of business in the State of California and conduct continuous and systematic business in this State. Defendants also placed the Accused Products (as defined below) in the stream of commerce directed to residents of the State of California, thereby deriving commercial benefits from the sale of Accused Products there and caused injury to Plaintiff within the State of California.

4.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

5.    Hydroxie is a limited liability company organized and existing under the laws of the state of California, with an office and principal place of business located at 306 W. El Norte Parkway, Suite N 92, Escondido, California 92026.

6.    Upon information and belief, Defendant Flame USA Inc is a Corporation organized and existing under the laws of California, with a registered office and principal place of business located at 580 W. Lambert Road, Suite I, Brea, California 92821.

7.     Plaintiff is informed, believes, and thereon alleges that Defendant Maduro Distributor is an unknown corporate entity with its principal place of business in Moreno Valley, California.

8.     Plaintiff is informed, believes, and thereon alleges that Defendant Albert Guzman is an individual residing and doing business in Orange County, California.

9.     Hydroxie is unaware of the names and true capacities of Defendants, whether individuals, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names.  Hydroxie will seek leave to amend this complaint when their true names and capacities are ascertained. Upon information and belief, each one of Defendants caused or are in some manner responsible for causing the wrongful acts alleged herein, and that at all relevant times each one was the agent, servant, and/or employee of the other Defendants acting within the course and scope of said agency, service, and employment.

10.     Upon information and belief, at all relevant times herein, each one of Defendants knew or reasonably should have known of the wrongful acts and behavior alleged herein and the damages caused thereby, ratified, and encouraged such acts and behavior, and/or had a non-delegable duty to prevent such acts and behavior but failed or refused to do so.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.     The Hydroxie Marks, Trade Dress, and Products

11.     Hydroxie is a California company in the nutritional and dietary supplement space that produces high quality chewable tablets, liquid shots, strips, and drink mixes designed to provide a convenient and effective way for consumers to manage pain and improve their overall well-being.

12.     Hydroxie products contain specific alkaloids, including 7-OH and mitragynine, which are known for their pain-relieving properties. Hydroxie offers 7-OH tablets of varying dosages, including 15mg and 30mg to cater to different consumer needs.

13. Hydroxie products are sold through its website, www.hydroxie.com. Hydroxie also distributes its products to wholesalers through its website www.hydroxiewholesale.com for sale in brick and mortar stores nationwide, including in this District.

14. \Hydroxie is known for manufacturing and distributing dietary and nutrition supplements of the highest quality, and for undertaking strenuous testing protocols to ensure its products are up to standard.

15. Hydroxie products have been praised and recognized by the consuming public, and Hydroxie has enjoyed great success in the marketplace by virtue of its significant efforts to provide high quality products and transparency in its ingredients list.

16. Hydroxie is the owner at common law of the HYDROXIE word mark, and the Hydroxie Smiley Face Logo, (collectively, the "Hydroxie Marks"):

| Hydroxie Mark | Goods/Services |
|---|---|
| **Hydroxie**<br><br>**"Hydroxie Stylized Word Mark"** | 005: Dietary and nutritional supplements; Dietary supplements; Dietary supplements for human beings; Herbal supplements; Natural herbal supplements.<br><br>035: On-line retail store services featuring dietary and nutritional supplements and herbal supplements |

| Hydroxie Mark | Goods/Services |
|---|---|
|   **"Hydroxie Smiley Face Logo"** | 005: Dietary and nutritional supplements; Dietary supplements; Dietary supplements for human beings; Herbal supplements; Natural herbal supplements. |
|   **"Hydroxie Leaf Packaging"** | 005: Dietary and nutritional supplements; Dietary supplements; Dietary supplements for human beings; Herbal supplements; Natural herbal supplements. |

17.   Most, if not all, of Hydroxie's products feature trademarks owned and Hydroxie, including the Hydroxie Marks.  Hydroxie uses the Hydroxie Marks as source identifiers for its goods.

18.   The Hydroxie Marks are inherently distinctive as their primary significance is to indicate to consumers that Hydroxie's products originate from Hydroxie.

19.   Nevertheless, the Hydroxie Marks have acquired distinctiveness through Hydroxie's extensive sales. Plaintiff is informed, believes, and alleges thereon that the consuming public recognizes the Hydroxie Marks as source indicators for Plaintiff's products.

20.   The packaging and product design that Hydroxie uses for its 15mg and 30mg tablets (the "Hydroxie Tablet Trade Dress") is inherently distinctive as its

primary purpose is to signal to consumers that Hydroxie is the source of the goods. Nevertheless, the Tablet Trade Dress has acquired distinctiveness through Hydroxie's extensive sales. Plaintiff is informed, believes, and alleges thereon that the consuming public recognizes the Hydroxie Tablet Trade Dress as a source indicator for Plaintiff's products.

21.     The Hydroxie Tablet Trade Dress is comprised of the following, non-functional elements:

    a.  A rectangular white cardboard box;

    b.  The front of the box has several distinctive, non-functional design elements, including:

        i.  A holographic authenticity seal in the lower left corner;

        ii.  a wave-shaped design with dark blue detailing;

        iii.  a decorative green leaf design element;

        iv.  a dark blue circle with white font denoting the amount and dosage of tablets;

        v.  "Hydroxie" in a large, stylized blue gradient font;

        vi.  and product details in a smaller dark blue font.

    c.  The back of the box has several distinctive, non-functional design elements, including:

        i.  "Hydroxie" in the same large, stylized blue gradient font as the front;

        ii.  Plaintiff's smiley face logo design in the upper right corner;

        iii.  Light blue and white boxes surrounding the dark blue text (including product directions, warnings, ingredients, and QR code leading to lab testing results).

    d.  The tablets themselves are light tan in color, with pressings on both sides. Each tablet has a capital "H" pressed on one side, and a line splitting the tablet in half on the other.

22.     The Hydroxie Tablet Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the dietary and nutritional supplements industry. The Hydroxie tablet packaging and product, which embody the Hydroxie Tablet Trade Dress, is pictured below:





*Authentic Hydroxie Tablet Packaging and Product Embodying the Hydroxie Tablet Trade Dress*

23.     The design of the Hydroxie Tablet Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the tablets. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Hydroxie Tablet Trade Dress. The combination of features comprising the Hydroxie Tablet Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the Hydroxie Tablets, the embodiment of the Hydroxie Tablet Trade Dress, as distinct products originating solely from Hydroxie.

24.     Hydroxie has always devoted substantial time, effort, and money to designing, developing, advertising, promoting, and marketing its products, and spends

considerable time and resources on advertising, promoting, and marketing the Hydroxie brand products. Hydroxie advertises throughout the world, from social media to trade shows open to the public, and has spent more than $500,000 on advertising and promoting its goods. As a result of its efforts, Hydroxie has sold tens of millions dollars' worth of goods, all bearing one or more of Hydroxie's trademarks, including the Hydroxie Marks.

25.     Hydroxie has been using the Hydroxie Marks and Hydroxie Tablet Trade Dress since no later than on or about February 7, 2024. The Hydroxie Marks and Hydroxie Tablet Trade Dress are featured prominently on packaging, websites, and promotional materials and have acquired secondary meaning through rapid consumer adoption and sales at both retail and wholesale levels.

26.     Hydroxie has continuously used the Hydroxie Marks and Hydroxie Tablet Trade Dress in interstate commerce in connection with the sale, distribution, promotion, and advertising of its goods. Accordingly, Hydroxie has used the Hydroxie Marks as a source identifier on various dietary supplements and related goods since 2024.

27.     The Hydroxie Marks and Hydroxie Tablet Trade Dress have come to identify, in the United States and throughout the world, high quality dietary supplements manufactured and distributed by Hydroxie. In turn, consumers have come to identify the Hydroxie Marks and Hydroxie Tablet Trade Dress as being associated with and originating from Hydroxie.

28.     Due to Hydroxie's use, extensive sales, and significant advertising and promotional activities, the Hydroxie Marks and Hydroxie Tablet Trade Dress have achieved widespread acceptance and recognition amongst the consuming public and trade throughout the United States.

29.     Hydroxie has achieved such success and recognition as to be copied by others without authorization, including, but not limited to Defendants.

**B.     Defendants' Infringing Conduct**

30.    The present lawsuit arises from Defendants' manufacture, production, marketing, distribution, advertisement, offering for sale, and/or sale of products, including but not limited to, dietary supplements and packaging that bear marks identical, substantially indistinguishable, or confusingly similar to one or more of the Hydroxie Marks and the Hydroxie Tablet Trade Dress ("the Accused Products"), exemplars of which are shown below:

 

*Examples of Accused Products*

31.    In or about July 2025, Plaintiff began receiving e-mails from an anonymous individual providing detailed information about a counterfeiting operation linked to Defendant Flame USA. While the identity of this individual (the "Whistleblower") is not known to Plaintiff, Plaintiff is informed, believes, and thereon alleges that he or she has intimate knowledge of business operations at Flame USA.

32.    Based upon the information and evidence furnished to Plaintiff by the Whistleblower, in or about August 2025, an agent of Plaintiff visited a facility in Brea, California operated by Defendant Flame USA.

*[Intentionally Left Blank]*

33.    Inside, Plaintiff's agent observed a warehouse with cardboard boxes, metal tables, and blister packaging machines, and boxes containing packaging bearing marks confusingly similar or substantially identical to the Hydroxie Marks and Hydroxie Tablet Trade Dress. Photographs of the Accused Products observed in the warehouse below:






34.    During this August 2025 visit to the Flame USA facility, Plaintiff's agent spoke with Defendant Guzman. Mr. Guzman represented to Plaintiff's agent that Flame USA was engaged in co-packing and "white labeling" (manufacturing for sale under

another name) for Hydroxie, among other companies, and described Flame USA as a "trusted manufacturer" with industry connections. Mr. Guzman refused to allow Plaintiff's agent to tour the facility.

35.    Plaintiff is informed, believes, and thereon alleges that Flame USA was and is pressing millions of counterfeit Hydroxie tablets and packaging them in boxes confusingly similar to or substantially identical to the boxes Hydroxie uses for its genuine tablets.

36.    Plaintiff is further informed, believes, and thereon alleges that Flame USA obtained the same dyes used to stamp the "H" emblem featured on genuine Hydroxie tablets to further confuse the consuming public into thinking the Accused Products were manufactured and distributed by Plaintiff.

37.    Plaintiff has received numerous complaints from established consumers of genuine Hydroxie products following their purchase of the Accused Products, including consumers in this District. Consumers who had purchased the Accused Products, thinking they had purchased genuine Hydroxie products, informed Plaintiff that the Accused Products tasted different and lacked the efficacy of genuine Hydroxie products.

38.    Plaintiff is informed, believes, and thereon alleges that Defendant Maduro distributed the Accused Products manufactured by Flame USA for sale.

39.    In or about September 2025, Plaintiff did comparative testing between authentic Hydroxie 15mg 7-OH tablets and the Accused Products manufactured and distributed by Defendants.

40.    The testing revealed that the Accused Products were not produced in accordance with Hydroxie's strict production standards. In fact, the Accused Products contained more than 25x the amount of residual solvents of the genuine Hydroxie tablets; were significantly more potent than the Hydroxie tablets; and differed in physical appearance from the genuine Hydroxie tablets.

41.    Upon information and belief, Defendants are engaged in the promotion,

marketing, offer for sale, and/or sale of dietary supplements, including the Accused Products, for retail distribution in brick-and-mortar stores and online, both of which are accessible to consumers throughout the United States, including those within this District.

42.    Upon information and belief, through the aforementioned channels of commerce, and related advertising, Defendants directly target consumers with the Accused Products, including those within this judicial district.

43.    Upon information and belief, Defendants manufactured, distributed, offered for sale, sold, and shipped the Accused Products to consumers in this judicial district.

44.    Defendants used the Hydroxie Marks and Hydroxie Tablet Trade Dress on the Accused Products without Hydroxie's permission.

45.    The Accused Products that Defendants manufactured, distributed, offered for sale, and sold to various consumers within this District are very likely cause confusion for consumers, including Plaintiff's customers, who, at the time of initial interest, sale, and/or in the post-sale setting are led to believe that the Accused Products are genuine goods originating from, associated with, and/or approved by Hydroxie due to the marks being identical, substantially indistinguishable, or confusingly similar to the Hydroxie Marks and Hydroxie Tablet Trade Dress.

46.    In fact, Plaintiff's customers are actually confused, as evidenced by their complaints to Plaintiff set forth hereinabove.

47.    Upon information and belief, Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive as to the origin, affiliation, or association of the Accused Products with Hydroxie, and the sponsorship or approval of the Accused Products by Hydroxie.

48.    Defendant's intent to confuse and deceive consumers is evident by virtue of a side-by-side comparison of the genuine Hydroxie tablets and the Accused Products:





49.    The fact that Defendant directly copied Plaintiff's Hydroxie Marks and Hydroxie Tablet Trade Dress is in itself evidence that the Hydroxie Marks and Hydroxie Tablet Trade Dress have acquired distinctiveness and secondary meaning.

## FIRST CAUSE OF ACTION

## (False Designation of Origin, False Descriptions, and False Advertising – 15 U.S.C. § 1125(a))

50.    Hydroxie incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

51.    Hydroxie is the common law owner of the Hydroxie Marks by virtue of its extensive use in commerce.

52.    Defendants' unauthorized use of marks identical, substantially indistinguishable, or confusingly similar to the Hydroxie Marks on its merchandise, in interstate commerce and advertising relating to same, constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Hydroxie or come from the same source as Hydroxie's goods when they in fact do not.

53.    Defendants' use of the Hydroxie Marks is without Hydroxie's permission or authority and in total disregard of Hydroxie' rights to control its trademarks.

54.    Defendants' activities are likely to lead to and result in confusion, mistake, or deception, and are likely to cause the public to believe that Hydroxie has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Hydroxie.

55.    In fact, Defendants' activities have already resulted in consumer confusion, as evidenced by the fact that longstanding consumers of genuine Hydroxie products expressed concern about deviations in quality after purchasing the Accused Products.

56.    Hydroxie has no adequate remedy at law.

57.    Defendants' conduct is intentional and outrageous to the extent that the present action is an "exceptional" case under 15 U.S.C. §1117(a).

58.    In light of the foregoing, Hydroxie is entitled to injunctive relief prohibiting Defendants from using any of the Hydroxie Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Hydroxie has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known.

## SECOND CAUSE OF ACTION

### (Trade Dress Infringement of "The Hydroxie Tablet Trade Dress" – 15 U.S.C. §1125(a))

59.    Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

60.    In 2024, Hydroxie introduced the Hydroxie Tablets, marketed and featuring the design elements protected under the "Hydroxie Tablet Trade Dress." The Hydroxie Tablet Trade Dress is unique and inherently distinctive, and is comprised of the following non-functional elements:

    a.  A rectangular white cardboard box;

    b.  The front of the box has several distinctive, non-functional design elements, including:

        i.  A holographic authenticity seal in the lower left corner;

        ii.  a wave-shaped design with dark blue detailing;

        iii.   a decorative green leaf design element;

        iv.   a dark blue circle with white font denoting the amount and dosage of tablets;

        v.   "Hydroxie" in a large, stylized blue gradient font;

        vi.   and product details in a smaller dark blue font.

    c.  The back of the box has several distinctive, non-functional design elements, including:

        i.  "Hydroxie" in the same large, stylized blue gradient font as the front;

        ii.  Plaintiff's smiley face logo design in the upper right corner;

        iii.  Light blue and white boxes surrounding the dark blue text (including product directions, warnings, ingredients, and QR code leading to lab testing results).

    d.  The tablets themselves are light tan in color, with pressings on both sides. Each tablet has a capital "H" pressed on one side, and a line splitting the tablet in half on the other.

61.     The Hydroxie Tablet Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the dietary and nutritional supplements industry. The Hydroxie tablet packaging and product, which embody the Hydroxie Tablet Trade Dress, is pictured below:





*Authentic Hydroxie Tablet Packaging and Product Embodying the Hydroxie Tablet Trade Dress*

62.     The design of the Hydroxie Tablet Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the tablets. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Hydroxie Tablet Trade Dress. The combination of features comprising the Hydroxie Tablet Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the Hydroxie Tablets, the embodiment of the Hydroxie Tablet Trade Dress, as distinct products originating solely from Hydroxie.

63.     Hydroxie has always devoted substantial time, effort, and money to designing, developing, advertising, promoting, and marketing its products, and spends

considerable time and resources on advertising, promoting, and marketing the Hydroxie brand products.  Hydroxie advertises throughout the world, from social media to trade shows open to the public, and has spent more than $500,000 on advertising and promoting its goods.  As a result of its efforts, Hydroxie has sold tens of millions dollars' worth of goods, the most popular of which is the Hydroxie Tablets, the embodiment of the Hydroxie Tablet Trade Dress.

64.    The Hydroxie Tablet Trade Dress is inherently distinctive as its primary purpose is to identify to consumers that Hydroxie is the source of the Hydroxie Tablets. Nevertheless, the Hydroxie Tablet Trade Dress is featured prominently on websites and promotional materials and has acquired secondary meaning through rapid consumer adoption and sales at both retail and wholesale levels.

65.    Moreover, the fact that Defendant clearly and directly copied the Hydroxie Tablet Trade Dress raises a strong inference that the Hydroxie Tablet Trade Dress has acquired secondary meaning.

66.    Upon information and belief, Defendant is a competitor of Hydroxie and Defendant introduced the Accused Products into the stream of commerce to exploit Hydroxie's goodwill and the reputation of the Hydroxie Tablets.

67.    The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendant bear confusingly similar reproductions of the Hydroxie Tablets, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Plaintiff of the Accused Products.

68.    Defendant's use of the Hydroxie Tablet Trade Dress is without Plaintiff's permission or authorization, and in total disregard of Plaintiff's rights to control its intellectual property.  There are numerous other product packaging options in the dietary and nutritional supplement industry, none of which necessitate copying or imitating the Hydroxie Tablet Trade Dress.

69.    Defendant's use of the Hydroxie Tablet Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe

that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Plaintiff.

70.     As a direct and proximate result of the foregoing acts, Plaintiff has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Plaintiff is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendant because of its infringing acts.

71.     Furthermore, unless Defendant's unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Plaintiff for the harm caused by Defendant's infringement, which is ongoing.   Accordingly, Plaintiff is entitled to injunctive relief prohibiting Defendant from continuing to infringe the Hydroxie Tablet Trade Dress, or any designs confusingly similar thereto.

## THIRD CAUSE OF ACTION

### (Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 et seq.)

72.     Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

73.     Plaintiff is the owner of the Hydroxie Marks and Hydroxie Tablet Trade Dress under the common law of California. The Hydroxie Marks are strong and distinctive marks that have been in use for years and have achieved enormous and widespread public recognition.

74.     Through prominent, long, and continuous use in commerce, the Hydroxie Marks and Hydroxie Tablet Trade Dress have become and continue to be distinctive in the State of California.

75.     Defendants' misappropriation of the Hydroxie Marks and Hydroxie Tablet Trade Dress was intended to capitalize on Hydroxie's goodwill for Defendant's own pecuniary gain.

76.     Defendants' unauthorized use of the Hydroxie Marks dilutes the distinctive quality of the Hydroxie Marks and decreases the capacity of such marks to identify and

distinguish Hydroxie's products and has caused a likelihood of harm to Hydroxie's business reputation.

77.    Additionally, by manufacturing, distributing, advertising, offering for sale, and selling the Accused Products, Defendants are deceiving and causing harm to the consuming public.

78.    By the acts described above, Defendants have caused and will continue to cause irreparable injury to Hydroxie's goodwill and business reputation, and have defrauded and will continue to defraud the public, all in violation of Cal. Bus. & Prof. Code § 17200 et seq.

79.    Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

80.    Defendants are liable to Hydroxie for all damages, whether direct or indirect, for the misappropriation of Hydroxie's trademarks, reputation and goodwill, which damages are subject to trebling.

81.    Upon information and belief, Defendants will continue their infringing acts unless restrained by this Court.

82.    Defendants' acts have damaged and will continue to damage Hydroxie, and Hydroxie has no adequate remedy at law.

83.    An order restraining Defendants from manufacturing, distributing, offering for sale, and selling fraudulently labeled dietary supplements would confer a significant benefit on the public.

84.    In light of the foregoing, Hydroxie is entitled to all available relief provided for in California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, et. seq. including permanent injunctive relief, restitution, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### (Common Law Trademark Infringement, Trade Dress Infringement, and Unfair Competition)

85.    Hydroxie incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

86.    Hydroxie owns and enjoys common law trademark rights to the Hydroxie Marks and Hydroxie Tablet Trade Dress in California and throughout the United States.

87.    Defendants' misappropriation of Hydroxie's common law trademarks and trade dress was intended to capitalize on Hydroxie's goodwill for Defendants' own pecuniary gain. Hydroxie has expended substantial time, resources, and effort to obtain an excellent reputation for itself and its Hydroxie Marks. As a result of Hydroxie's efforts, Defendants are now unjustly enriched and are benefiting from property rights that rightfully belong to Hydroxie.

88.    Defendants' unauthorized use of the Hydroxie Marks and Hydroxie Tablet Trade Dress has caused and is likely to cause confusion as to the source of Defendants' products due to the marks appearing identical, substantially indistinguishable, or confusingly similar to the Hydroxie Marks, all to the detriment of Hydroxie.

89.    Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Hydroxie.

90.    Defendants' acts constitute unfair competition under California common law.

91.    Hydroxie has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' infringing conduct unless it is enjoined by this Court.

92.    The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Hydroxie intentionally and/or in reckless disregard of Hydroxie' rights. Said conduct was despicable and harmful to Hydroxie and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of Defendants and to deter them from similar such conduct in the future.

93.    In light of the foregoing, Hydroxie is entitled to injunctive relief prohibiting Defendants from using the Hydroxie Marks to recover all damages that

Hydroxie has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Hydroxie respectfully prays that this Court enter judgment in its favor and against Defendants as follows:

1.     Entry of an ORDER granting temporary, preliminary, and permanent injunctive relief restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

        a. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products and/or any other products that bear the Hydroxie Marks and/or Hydroxie Tablet Trade Dress, or any other marks identical, substantially indistinguishable, or confusingly similar thereto;

        b. engaging in any other activity constituting unfair competition with Hydroxie, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Hydroxie;

        c. committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Hydroxie;

2.     Entry of an ORDER directing Defendants to recall from any distributors and retailers and to deliver to Hydroxie for destruction, or other disposition, all remaining inventory of the Accused Products, in addition to any other goods that infringe upon Hydroxie's rights to the Hydroxie Marks and Hydroxie Tablet Trade

Dress, including all advertisements, promotional and marketing materials therefore, as well as means of making same in their possession or under their control;

3.      Entry of an ORDER directing Defendants to disclose their supplier(s) and manufacturer(s) of the Accused Products and provide all documents, correspondence, receipts, and invoices associated with the purchase of the Accused Products;

4.      Entry of an ORDER directing Defendants to file with this Court and serve on Hydroxie within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

5.      Entry of an ORDER for an accounting by Defendants of all gains, profits, and/or advantages derived from their infringing acts pursuant to 15 U.S.C. § 1117(a);

6.      An award of all profits that Defendants have derived from using the Hydroxie Marks, trebled, as well as costs and attorneys' fees;

7.      An award of enhanced damages due to Defendants' willful infringement;

8.      An award of applicable interest amounts, costs, disbursements, and/or attorneys' fees, as an exceptional case under 15 U.S.C. § 1117(a) or otherwise;

9.      An award of fees and punitive damages to the full extent available in connection with Hydroxie's claims under California law; and

10.     Any such other relief that may be just and proper.


Dated:        October 17, 2025          BLAKELY LAW GROUP

                                        By:    */s/ Brent H. Blakely*
                                               Brent H. Blakely
                                               Victoria E. Mulvey
                                               ***Attorneys for Plaintiff***
                                               ***Hydroxie LLC***

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Hydroxie LLC hereby demands a trial by jury as to all claims in this litigation.

Dated:　　October 17, 2025　　　　BLAKELY LAW GROUP

By:　　*/s/ Brent H. Blakely*
　　　　Brent H. Blakely
　　　　Victoria E. Mulvey
　　　　**Attorneys for Plaintiff
　　　　Hydroxie LLC**